UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sonya Welch,                                                   Case No. 3:12-cv-02334

        Plaintiff

   v.                                                          ORDER

IAC Huron, LLC.,

        Defendant

### INTRODUCTION

Before me is the motion of Defendant IAC Huron, LLC, for summary judgment pursuant to Rule 56(b). (Doc. No. 24). Plaintiff Sonya Welch filed a memorandum in opposition. (Doc. No. 26). IAC filed a reply memorandum. (Doc. No. 27). For the reasons stated below, IAC's motion is denied.

### BACKGROUND

Welch began working at the Lear Corporation's Huron plant in 1997, and continued working at that location after IAC purchased the plant in 2007. Welch most recently worked as a back former, helping to make fire walls for vehicle interiors. (Doc. No. 25-3 at 3). Welch sustained a non-work-related injury to her shoulder sometime between August 5 and August 7, 2011. (Id. at 13). She obtained a note from her physician indicating she needed to be off of work from August 8 through August 14, 2011. (Id.). She obtained a second note covering August 15-16, and then returned to work on August 17. (Id.). Though she was in substantial pain, Welch continued working until she was examined by a chiropractor for an unrelated condition. (Id. at 13-14). At that

point, Welch was diagnosed with a separated shoulder. (Id. at 14). Welch obtained separate medical leave slips for the work weeks of August 22-26, August 29 – September 2, and September 5-9. (Id.).

Welch asserts that, on September 9, she obtained another medical leave slip for the work week of September 12-16, and that on September 10 she placed this slip in a locked drop box located outside of the break room at IAC's facility. (Doc. No. 25-3 at 19). On September 11, Welch also called to notify IAC she would not be at work on September 12. (Id. at 34). Kelly Jackson, the IAC human resource specialist tasked with the responsibility of collecting medical leave slips from the drop box, did not retrieve a leave slip excusing Welch for September 12-16. (Doc. No. 25-2 at 2). IAC terminated Welch after she did not call to inform IAC that she would be absent on September 13, 14, or 15. (Doc. No. 24 at 4).

Through the United Auto Workers Local 913, Welch filed a grievance over her termination, seeking reinstatement of her employment with IAC. (Doc. No. 25-3 at 153). IAC concluded Welch's explanation for the missing medical leave slip was not credible and denied her grievance. (Id. at 160).

On August 14, 2012, Welch filed suit against IAC in the Court of Common Pleas for Erie County, Ohio, alleging IAC violated Ohio law when it discriminated against her on the basis of a disability and terminated her employment. (Doc. No. 1-1). IAC removed the complaint to federal court on September 18, 2012, pursuant to 28 U.S.C. § 1441. (Doc. No. 1).

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may

meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)). Rule 56 "requires the [non-moving] party to go beyond the pleadings" and present some evidence in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, a court "must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (*citing 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). "At the summary judgment stage[,] the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## ANALYSIS

Welch alleges IAC violated Ohio law by terminating her in breach of "its duty . . . to engage in an interactive dialogue to determine whether a reasonable accommodation could be made for Plaintiff's disability prior to taking any adverse employment action against her."[1] (Doc. No. 1-1 at 3). Under Ohio law, an employer may not "discharge without just cause" or "discriminate against"

---

[1] Welch does not offer any argument or evidence in support of a reasonable accommodation claim; instead she asserts IAC discriminated against her on the basis of a disability. (*See* Doc. No. 26).

3

an employee because of the employee's disability. O.R.C. § 4112.02(A). When a plaintiff lacks direct evidence of discrimination, courts must apply the burden shifting framework set out in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See, e.g., Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981); *Hood v. Diamond Prods., Inc.*, 658 N.E.2d 738, 741-42 (Ohio 1996).

**DISABILITY DISCRIMINATION**

In order to establish a prima facie case of disability discrimination, the plaintiff must show (1) she had a disability; (2) her employer took an adverse employment action against her, at least in part because of her disability; and (3) despite her disability, she could "safely and substantially perform the essential functions" of her job. *Hood*, 658 N.E.2d at 741. If the plaintiff establishes her prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden of production, the plaintiff must show the employer's stated reason merely was a pretext for discrimination. *Id.* at 742.

Welch offers three potentially disabling conditions: (1) back and neck pain from a deteriorating disc; (2) a history of migraine headaches; and (3) the separated shoulder she suffered in a non-work-related accident. (Doc. No. 26 at 9). While Welch's back and neck pain and her migraines conceivably meet the statutory definition of disability set forth in O.R.C. § 4112.01(A)(13), Welch offers no evidence to support an inference that IAC terminated her because of those conditions. (*See* Doc. No. 25-3 at 24, 25 (stating she did not believe IAC terminated her employment because of her back and neck pain and continued to work despite occasional migraines)).

IAC claims Welch's separated shoulder is not the type of injury that "constitute[s] a disability under the [Americans with Disabilities Act] or Ohio law" because it is a temporary impairment. (Doc. No. 24 at 13). The Supreme Court previously held that, in order to be substantially limiting,

4

an impairment "must . . . be permanent or long term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). Congress explicitly rejected the *Williams* construction of "substantially limits," however, stating the *Williams* Court "created an inappropriately high level of limitation necessary to obtain coverage under the ADA . . . ." The ADA Amendments Act of 2008, PL 110-325, sec. 2, 122 Stat 3553. The Supreme Court of Ohio repeatedly has held courts considering disability discrimination claims under O.R.C. § 4112.02 may look to case law and regulations interpreting the ADA for guidance. *See, e.g., Columbus Civ. Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998). The statutory definitions of "disability" under federal and Ohio law are nearly identical, and neither definition includes the temporal limitation *Williams* endorsed and Congress rejected. *See* 42 U.S.C. § 12102(10)(A)-(C); O.R.C. § 4112.01(A)(13).

I have been unable to locate a case in which a court applying Ohio law addresses what impact the ADA Amendments Act has on the interpretation of O.R.C. § 4112.01(A)(13). A number of Ohio courts, however, have noted the ADA Amendments Act overrules *Williams* as to conduct which occurred after January 1, 2009. *See, e.g., Canady v. Rekau & Rekau, Inc.*, No. 09AP-32, 2009 WL 3021764, at *8 (Ohio Ct. App. Sept. 22, 2009); *Camp v. Star Leasing Co.*, No. 11AP-977, 2012 WL 3291798, at *10 n. 4 (Ohio Ct. App. Aug. 14, 2012). I conclude Ohio courts no longer would apply the *Williams* temporary/permanent distinction Congress rejected, and that the temporal duration of Welch's condition would not disqualify that condition as a disability under the meaning of O.R.C. § 4112.01(A)(13). *Cf. Hood*, 658 N.E.2d at 742 (holding disability determinations "should be made on a case-by-case basis"). Welch has established that, for purposes of summary judgment, her shoulder injury constitutes a disability under O.R.C. § 4112.01(A)(13). (*See* Doc. No. 25-3 at 13).

In addition to the pain her shoulder injury caused her while attempting to complete her job responsibilities, Welch also testified her chiropractor told her she risked permanent damage to her shoulder if she continued working without allowing it to heal. (Doc. No. 25-3 at 13-14). Though this injury may have prevented her from performing her normal work duties, IAC's contention

5

Welch did not ask for "any type of assistance or accommodation from IAC" ignores the obvious accommodation it provided through the collective bargaining agreement: the medical leave of absence.  *See Walsh v. United Parcel Service*, 201 F.3d 718, 726 (6th Cir. 2000) (noting "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances"); (Doc. No. 25-3 at 51).  There are hypothetical accommodations Welch could have requested to permit her to continue working, including a light duty assignment, but it would undermine the purpose of anti-discrimination laws, as well as the National Labor Relations Act, to allow an employer to terminate an employee for utilizing the procedures the employer agreed during collective bargaining to provide.

      Welch has greater difficulty establishing the causation element of her prima facie case.  While she suffered an adverse employment decision when IAC terminated her, the only evidence Welch presents to support a causal connection between her disability and her termination is IAC's knowledge she was on short-term disability leave and the close temporal proximity between her short-term leave and her termination.  (Doc. No. 26 at 9).  Welch alleges her coworkers could see how much pain she was in while attempting to work through her shoulder injury, but offers no evidence IAC knew about the injury.  (Doc. No. 25-3 at 13).  Further, Jackson unambiguously states she "was not aware of the reason for [Welch's medical leave] . . . ."  (Doc. No. 25-2 at 2).  It is true, however, that IAC knew Welch had doctor's notes to support medical leave requests for all but three work days between August 8 and September 9, and also was receiving short-term disability benefits from a third-party administrator.  (Doc. No. 25-3 at 13-14; Doc. No. 24 at 2-3).  Viewed in the light most favorable to Welch, the evidence is sufficient to create a genuine issue as to whether IAC knew Welch had a disability.

**PRETEXT**

IAC asserts it did not terminate Welch's employment because of her disability, but because she failed to submit a doctor's note extending her medical leave beyond September 9. (Doc. No. 24 at 15). *See Hood*, 658 N.E.2d at 741 (once the plaintiff establishes a prima facie case, the employer must "set forth some legitimate, nondiscriminatory reason for the action taken"). In order to defeat IAC's motion for summary judgment, Welch must identify a genuine issue of material fact as to whether (1) IAC's proffered reason had a basis in fact; (2) the proffered reason actually motivated her discharge; or (3) the proffered reason was sufficient to motivate her discharge. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). IAC's attendance policy states that employees who do not return to work after the expiration of an approved medical leave of absence will be considered as absent and assessed points under the policy. (Doc. No. 25-3 at 50). IAC has consistently contended it did not receive a leave slip extending Welch's leave until after she was terminated on September 15 and that it terminated Welch because she failed to comply with the attendance policy.[2] (Doc. No. 25-2 at 2; Doc. No. 25-3 at 160).

Welch contends she placed a medical leave slip in the drop box, and that her daughter witnessed her do so.[3] (Doc. No. 25-3 at 20). Viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party, I conclude a jury reasonably could believe Welch in fact submitted a medical leave slip as required by IAC's attendance policy, and therefore could conclude IAC's proffered motive did not have a basis in fact. *See also Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) ("At the summary judgment stage, the issue is

---

[2] In its reply memorandum, IAC argues the honest belief rule compels summary judgment in its favor because "IAC reasonably relied on the evidence before it when it terminated Ms. Welch's employment and denied her grievance." (Doc. No. 27 at 13-14). The honest belief rule, particularly in the context of pretext in discrimination cases, is a judicially created doctrine; one which the Sixth Circuit has applied with some frequency in ADA cases. *See, e.g., Smith v. Chrysler Corp.*, 155 F.3d 799 (6th Cir. 1998). Ohio courts have not adopted the honest belief rule in disability discrimination cases, and so it has no relevancy here.

[3] IAC implies I cannot consider Welch's claim that her daughter witnessed her turn in her leave slip on summary judgment. (Doc. No. 27 at 10). This is not entirely accurate. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (nonmoving party is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment."); Fed. R. Civ. P. 56(c) (movant may prove the absence of a genuine dispute of material fact in part by showing the "adverse party <u>cannot</u> produce admissible evidence to support the [disputed] fact") (emphasis added).

7

whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation." (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (2009)).

**PUNITIVE DAMAGES**

IAC asserts "[t]he undisputed evidence . . . does not warrant submission of plaintiff's claim for punitive damages to a jury." (Doc. No. 24 at 17). Welch argues "immediately upon returning from medical leave the week of August 16, 2011, she was verbally abused by her temporary supervisor Rick Yants." (Doc. No. 26 at 10). Later that week, Welch testified, a co-worker told her that plant superintendent Jim Genow had stated that IAC "was out to get [her] and they were going to watch everything [she] did." (Doc. No. 25-3 at 26).

Under Ohio law, punitive damages may be awarded if the plaintiff proves by a preponderance of the evidence the defendant acted with actual malice. *See, e.g., Cabe v. Lunich*, 640 N.E.2d 159, 162 (Ohio 1994). The plaintiff must prove "the defendant possessed either (1) that state of mind under which a person's conduct is characterized by hatred, ill will[,] or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* (*citing Preston v. Murty*, 512 N.E.2d 1174 (Ohio 1987)). "A conscious disregard of the right not to be subject to . . . discrimination is sufficient to allow the award of punitive damages." *Thomas v. Columbia Sussex Corp.*, No. 10AP-93, 2011 WL 96277, at *8 (Ohio Ct. App. 2011); *see also Rice v. CertainTeed Corp.*, 704 N.E.2d 1217, 1218 (Ohio 1999) (concluding Ohio law "authorizes an award of punitive damages in civil employment discrimination actions").

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine dispute as to a material fact. IAC's conclusory assertion that the "undisputed evidence does not warrant submission of plaintiff's claim for punitive damages to a jury" falls short. (*See* Doc. No. 24 at 17). IAC fails to prove a reasonable jury could not conclude that Genow's alleged statements, combined with the temporal proximity of Welch's disability leave and subsequent

8

termination, support a finding of a spirit of revenge or a conscious disregard of the right not to be subject to discrimination. Further, as I previously noted, IAC's claim that Welch cannot defeat a motion for summary judgment in part through hearsay evidence is inaccurate.

## CONCLUSION

For the reasons stated above, IAC fails to establish the absence of a genuine dispute as to material facts and IAC's motion for summary judgment is denied.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge